**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **ETHAN CARL DICK,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 3:26-cv-00201** |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **GALVESTON COUNTY, TEXAS; DEPUTY A.P. SAVAGE, in his individual capacity; DEPUTY K.D. CAGNON, in his individual capacity; and DEPUTY A.J. MEJIA, in his individual capacity,** | § § § § § § § | |
| **Defendants.** | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Ethan Carl Dick, and for his First Amended Complaint against Defendants Galveston County, Texas; Deputy A.P. Savage, in his individual capacity; Deputy K.D. Cagnon, in his individual capacity; and Deputy A.J. Mejia, in his individual capacity, respectfully shows the Court as follows:

## I. INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, arising from the force Galveston County Sheriff's Office deputies used on Plaintiff on the night of May 4, 2025, at an RV park in Bacliff, Texas.

2. Plaintiff walked toward the deputies that night because his coworker, who was being arrested, asked that his wallet be handed to Plaintiff. Deputy Cagnon agreed to bring the wallet over. About twenty-four seconds after the first instruction to stay back, and after Deputies Savage and Cagnon had taken hold of Plaintiff's arms, Deputy Savage wrapped his arms around Plaintiff from behind, lifted him off his feet, and brought him down face-first onto a concrete driveway. Once Plaintiff was face-down on the concrete, Deputy Cagnon struck him twice in the face with a closed fist. Deputy Mejia, who was within arm's reach, did not intervene.

3. Plaintiff suffered broken teeth, a concussion, facial trauma, a sprained wrist, a sprained shoulder, and a lacerated lip that required stitches. The jail nurse refused to book him into the Galveston County Jail because of his injuries.

4. Plaintiff seeks compensatory damages from each Defendant, punitive damages from Deputies Savage, Cagnon, and Mejia, and attorney's fees and costs under 42 U.S.C. § 1988.

5. Plaintiff files this First Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B), within twenty-one days after service of Defendants' motions to dismiss the *Original Complaint* (Dkt. 13, 14, 15, 16). This First Amended Complaint supersedes the *Original Complaint*. It does not name Sheriff Jimmy Fullen, who was sued in his official capacity only, or Corporal J. Cruz as defendants. Plaintiff's claims against Galveston County, the entity for which Sheriff Fullen acts, are stated below.

## II. JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action arises under the Constitution and laws of the United States.

7. Venue is proper in the Southern District of Texas, Galveston Division, under 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred in Galveston County, Texas.

## III. PARTIES

8. Plaintiff Ethan Carl Dick is an individual who resides in the State of Louisiana.

9. Defendant Galveston County, Texas is a political subdivision of the State of Texas. Galveston County has appeared through counsel and may be served through its attorneys of record, or through the Galveston County Judge, 722 Moody Avenue, Galveston, Texas 77550, or wherever it may be found.

10. Defendant A.P. Savage is a deputy of the Galveston County Sheriff's Office. Savage has appeared through counsel and may be served through his attorneys of record or wherever he may be found. He is sued in his individual capacity.

11. Defendant K.D. Cagnon is a deputy of the Galveston County Sheriff's Office. Cagnon has appeared through counsel and may be served through his attorneys of record or wherever he may be found. He is sued in his individual capacity.

12. Defendant A.J. Mejia is a deputy of the Galveston County Sheriff's Office. Mejia has appeared through counsel and may be served through his attorneys of record or wherever he may be found. He is sued in his individual capacity.

## IV. QUALIFIED IMMUNITY, *HECK V. HUMPHREY*, AND DEFENDANTS' RECORDINGS

13. Defendants have asserted qualified immunity and the bar of *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants have also asked the Court to consider body-worn camera recordings filed with their motions. Plaintiff addresses each here so that the factual allegations that follow may be read against them.

14. *Heck* bars a claim only when a judgment for the plaintiff would necessarily imply the invalidity of the plaintiff's conviction. *Heck*, 512 U.S. at 487. A conviction for resisting arrest does not bar a claim that officers used excessive force after the resistance ended. *Bush v. Strain*, 513 F.3d 492, 497–98 (5th Cir. 2008). Plaintiff does not contest his conviction under Texas Penal Code § 38.03 and does not ask the Court or a jury to find that he did not resist. His claims concern the force described in Sections V.C and V.D below.

15. As of May 4, 2025, it was clearly established that the reasonableness of force is judged under the totality of the circumstances, including the severity of the offense, the threat posed, and the resistance offered, *Graham v. Connor*, 490 U.S. 386, 396 (1989), and that the inquiry covers the whole of the encounter rather than only the moment force was used, *Barnes v. Felix*, 605 U.S. 73 (2025). It was also clearly established that an officer may not slam a restrained or subdued person's face into a hard surface, *Bush*, 513 F.3d at 501–02, and that an officer who is present when another officer uses excessive force, and who has a reasonable

opportunity to prevent it, is liable if he does not act, *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

16. It was likewise clearly established that the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers, *City of Houston v. Hill*, 482 U.S. 451, 461 (1987), and that an officer may not take adverse action against a person that is substantially motivated by that person's protected speech, *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). *Nieves v. Bartlett*, 587 U.S. 391 (2019), addressed retaliatory arrest. Plaintiff's retaliation claim challenges the force used, not the decision to arrest, and *Nieves* did not decide whether its probable-cause rule extends to retaliatory force.

17. When a recording is properly before the Court on a motion to dismiss, the Court views the facts in the light most favorable to the plaintiff and may set aside his well-pleaded allegations only to the extent the recording blatantly contradicts them. *See Scott v. Harris*, 550 U.S. 372, 378–80 (2007); *Perdomo v. City of League City*, No. 25-40106, slip op. at 5 (5th Cir. Jan. 7, 2026).

18. Defendants rely on *Perdomo*, citing the district court's decision, 765 F. Supp. 3d 613. The Fifth Circuit affirmed on the ground that the recordings showed the plaintiff was "neither 'submissive' nor 'compliant.'" *Perdomo*, slip op. at 5. Plaintiff's claims here do not depend on an allegation that he was submissive or compliant, and he makes none. His claims rest on what followed: Savage lifted him off his feet, turned him over, and brought him face-first onto the concrete after Savage and Cagnon had taken hold of his arms, and Cagnon struck him in the face

after he was face-down. (Sections V.C and V.D.) The recordings Defendants filed do not contradict those allegations. The still frames from Defendants' Exhibit 2 attached as Exhibit A depict them.

## V. FACTUAL ALLEGATIONS

### *A. The Wallet Request*

19. On the night of May 4, 2025, Galveston County Sheriff's Office deputies responded to a reported disturbance at the Kemah RV Park, 675 Miles Road, Bacliff, Texas. Deputies Savage, Cagnon, and Mejia were among the deputies on scene.

20. Plaintiff was inside his camper at the RV park. His coworker, Jeremy Harrison, was being arrested by the deputies.

21. As Harrison was being placed in a patrol vehicle, he saw Plaintiff and asked Cagnon: "Can you give my wallet to him?" Cagnon answered: "Yeah." Harrison called out: "Hey come here Ethan." Cagnon called out: "Stay over there and I'll bring it to you."

22. Plaintiff was unarmed. He did not display or reach for a weapon, did not threaten anyone, and did not try to flee.

### *B. The Words Exchanged*

23. Savage told Plaintiff more than once to stay back. Plaintiff said to Savage: "Hey fuck you man." Harrison called to Plaintiff from the patrol vehicle: "Hey don't get in no trouble."

24. Plaintiff asked Harrison why he was being arrested. Savage told Plaintiff to back up. Plaintiff answered: “No I ain’t done shit.” Savage told Plaintiff to put his hands behind his back. Plaintiff answered: “No I was just askin’ man.”

25. Cagnon said to Plaintiff: “We told you to move.” Approximately nine seconds passed between that statement and the moment Plaintiff struck the concrete. Approximately twenty-four seconds passed between the first instruction to stay back and the moment Plaintiff struck the concrete.

***C. The Takedown***

26. Savage and Cagnon took hold of Plaintiff, one on each side. Cagnon held Plaintiff’s right arm. Savage held Plaintiff’s left arm.

27. While Savage and Cagnon held Plaintiff’s arms, Plaintiff was told to put his hands behind his back.

28. Mejia approached with his Taser in his hand and called out: “Put your fuckin’ hands behind your back, stop resisting or I’m gonna tase you, I’m gonna fuckin’ tase you.” Plaintiff answered: “I was just askin’ man.” Plaintiff then said: “Alright.” On Exhibit 2, described in Section V.G, that statement is audible at approximately 10:13:52 p.m. on its displayed time.

29. At approximately 10:13:50 p.m. on the displayed time of Exhibit 2, Cagnon held Plaintiff’s right arm, Savage held Plaintiff’s left arm, and Plaintiff was standing with both feet on the ground. (Ex. A-2, A-3.) Savage then released Plaintiff’s left arm, moved behind Plaintiff, and wrapped both of his arms around Plaintiff’s torso, with his hands around the front of Plaintiff’s body. (Ex. A-4, A-5.)

30. In one continuous motion, Savage lifted Plaintiff off his feet and turned Plaintiff's body over, so that Plaintiff's legs rose above his head and his head and upper body were directed toward the concrete driveway. (Ex. A-6, A-7.) Savage brought Plaintiff down face-first onto the concrete, coming down on top of him. (Ex. A-8.) Approximately one second passed between Savage wrapping his arms around Plaintiff and Plaintiff striking the concrete.

31. Plaintiff's face struck the concrete. He was not able to break his fall. As Plaintiff's face struck the concrete, his right arm extended outward to his right side.

32. Mejia took hold of Plaintiff as Plaintiff was brought to the ground.

### *D. The Strikes on the Ground*

33. After Plaintiff was face-down on the concrete, Cagnon struck Plaintiff twice in the face with a closed fist.

34. In a supplement report Cagnon wrote about the incident, he stated that he delivered "two closed fist strikes to Ethan's face" after Plaintiff had been "taken to the ground," and that the strikes "provided positive results."

35. Savage and Mejia were on or beside Plaintiff, within arm's reach of him and of Cagnon, when Cagnon struck Plaintiff. Neither said or did anything to stop Cagnon.

36. Mejia helped handcuff Plaintiff after the strikes. According to Defendants, Plaintiff was handcuffed at 10:14:17 p.m. (Dkt. 13–16, § II.)

### *E. Injuries and Medical Care*

37. Plaintiff suffered broken teeth, including a tooth knocked from his mouth, a concussion, facial trauma, a sprained wrist, a sprained shoulder, and a lacerated lip that required stitches. His blood pooled on the driveway where his face struck the concrete.

38. Emergency medical services were called to the scene. Minutes after his head and face struck the concrete, while he was bleeding from the face, Plaintiff declined treatment at the scene.

39. Deputies transported Plaintiff to the Galveston County Jail. The jail nurse on duty refused to accept Plaintiff into the jail because of the severity of his injuries.

40. Plaintiff was then taken to an outside medical facility, where his lip was stitched. The stitches were placed without adequate anesthetic.

41. Medical care for detainees at the Galveston County Jail was provided at the time by VitalCore Health Strategies, LLC, under contract with Galveston County.

### *F. Charges and Plea*

42. Plaintiff was charged with interference with public duties and with resisting arrest, search, or transport. He was taken before a magistrate and posted bond.

43. On October 24, 2025, Plaintiff pleaded nolo contendere to resisting arrest, search, or transport under Texas Penal Code § 38.03(a), a Class A misdemeanor, in Cause No. MD-0424114 in County Court at Law No. 3 of Galveston County, Texas. He was sentenced to four days in the county jail, with two days of credit.

44. The judgment does not identify the act or acts on which the conviction rests or when they occurred.

45. Plaintiff does not contest the conviction in this action. His claims concern the takedown described in Section V.C, which Savage carried out after two deputies had taken hold of Plaintiff's arms, and the strikes described in Section V.D, which Cagnon delivered after Plaintiff was face-down on the concrete.

### *G. The Recordings*

46. Each of the deputies on scene wore a body-worn camera, and the patrol units on scene were equipped with in-car camera systems that record on more than one channel.

47. A body-worn camera is mounted on the officer who wears it and moves with that officer. During the takedown and the strikes, the deputies wearing the cameras were moving and were in physical contact with Plaintiff and with each other.

48. With their motions to dismiss the *Original Complaint*, Defendants filed four body-worn camera recordings (Dkt. 13–17, Exs. 1–4). They filed no in-car camera recording.

49. Exhibit 1 is Savage's body-worn camera recording. From approximately 10:13:50 p.m. to 10:13:54 p.m. on its displayed time, the lens is covered or pressed against a body for most of that period, and the recording does not show Plaintiff being lifted or brought to the ground.

50. Exhibit 2 is Mejia's body-worn camera recording, made while Mejia was moving toward Plaintiff. Many of its frames between approximately 10:13:52 and

10:13:54 p.m. on its displayed time are blurred by the camera's motion and partly obscured by glare.

51. Fifteen still frames from Exhibit 2, spanning approximately 10:13:49 to 10:13:56 p.m. on its displayed time, are attached as Exhibit A and numbered A-1 through A-15. They show Savage's arms around Plaintiff's torso at approximately 10:13:52 to 10:13:53 p.m. (Ex. A-4, A-5); Plaintiff's legs above his head at approximately 10:13:53 p.m. (Ex. A-6, A-7); and Plaintiff on the concrete at approximately 10:13:54 p.m. (Ex. A-8 through A-12).

52. Each frame in Exhibit A was extracted from Exhibit 2 as Defendants filed it. Each is reproduced in full, without cropping or enhancement, and bears the date, time, and device identifier displayed in that frame.

53. Exhibit 3 is Cagnon's body-worn camera recording. From approximately 11:17:13 to 11:17:28 on its displayed time, the view is dark or blocked by bodies at close range.

54. The time displayed on Exhibit 3 runs approximately one hour and three minutes ahead of the time displayed on the other deputies' recordings. The displayed time on Exhibit 3 also advances approximately five minutes and twenty-five seconds for every five minutes of playback.

55. Exhibit 4 is the body-worn camera recording of Corporal Cruz. It begins at 10:14:35 p.m. on its displayed time, after Plaintiff had been handcuffed.

56. None of Exhibits 1 through 4 shows a continuous, unobstructed view of Savage lifting Plaintiff and bringing him down onto the concrete.

57. Through a request under the Texas Public Information Act, Plaintiff obtained in-car camera recordings from the units on scene. The recording produced from Mejia's unit, Unit 3215, bears a file name indicating a start time of 03:15 UTC on May 5, 2025, which is 10:15 p.m. Central time on May 4, 2025, after Plaintiff had been taken to the ground and handcuffed. Plaintiff has not received an in-car recording from Unit 3215 covering 10:13 p.m.

58. Each of Exhibits 1 through 4 bears an encoder tag identifying FFmpeg (Lavf60.16.100), a third-party software program, rather than the recording system. None of the recordings filed by Defendants or produced to Plaintiff is in the native format written by the recording system. A preliminary review of the in-car files produced to Plaintiff indicates that the processing removed their original recording dates and system identification.

### *H. Supervisory Review of the Force*

59. Corporal Cruz reviewed and approved Cagnon's supplement report on May 7, 2025, at 11:34 p.m., three days after the incident. The report Cruz approved contained Cagnon's statement that he struck Plaintiff twice in the face with a closed fist after Plaintiff had been taken to the ground.

60. Cruz did not recommend discipline, investigation, or further review of the strikes.

61. Jimmy Fullen has been the elected Sheriff of Galveston County since January 2025.

62. No investigation, discipline, or corrective action followed the takedown of Plaintiff or the strikes to his face. Savage, Cagnon, and Mejia remained on duty.

***I. Prior Incidents Known to Galveston County***

63. Before May 4, 2025, the following incidents involving Galveston County Sheriff's Office personnel were known to Galveston County through litigation in which the County or its personnel were represented by counsel, through criminal proceedings against Sheriff's Office personnel, and through the Sheriff's Office's own reporting and review.

64. *Jacobs v. Trochesset*, No. 3:16-cv-65 (S.D. Tex.). Jesse Clayton Jacobs, a 32-year-old detainee serving a 30-day sentence, died on March 15, 2015, after jail medical staff withheld his prescribed medication despite a physician's letter stating that it was "imperative" he receive it. The Galveston County Medical Examiner attributed his death to abrupt discontinuation of long-term Alprazolam medication. On November 2, 2016, the Court denied the Sheriff's motion to dismiss on qualified immunity grounds. Galveston County was a named defendant.

65. *Ledezma Perales v. Wuneburger*, No. 3:22-cv-00061 (S.D. Tex.). On November 29, 2020, Sergeant Jonathan Wuneburger pushed detainee Efrain Ledezma Perales to the floor of his jail cell, causing fatal head injuries. Ledezma Perales died on December 14, 2020. A Galveston County grand jury indicted Wuneburger for manslaughter in June 2021. In December 2023, Wuneburger pleaded to criminally negligent homicide and received seven years of probation.

66. *Huber v. Galveston County*, No. 3:21-cv-00089 (S.D. Tex.). A detention officer used a riot shield to take a restrained detainee to the ground, the detainee's head

struck concrete, and force continued after he was handcuffed. The Court denied the officer summary judgment on qualified immunity as to that conduct.

67. *Sanyal v. Creech*, No. 3:24-cv-00325 (S.D. Tex.). On May 21, 2023, Deputy Jeremy Creech tased motorist Samudragupta Sanyal at a roadblock after Sanyal had stepped out of his vehicle and was following Creech's orders. On June 9, 2025, the Court denied Creech's motion to dismiss the excessive force claim against him.

68. Sheriff's Office Event Nos. 2024-058245 and 2024-058246. On May 22, 2024, Deputy Jacob Danesi stopped Beau Alexander Pryor because Pryor made an obscene gesture. Danesi's CAD narrative describes the stop as a "reasonable suspicion stop for obscene gesture to passing cars." No citation was issued, and the disposition was recorded as NIO. Danesi held Pryor for 24 minutes and 28 seconds, called for backup, and recorded his belief that Pryor was a "sovereign citizen" after Pryor asserted his constitutional rights.

69. *Palacios v. Galveston County*, No. 3:26-cv-00152 (S.D. Tex.). On September 10, 2024, jailer Skylar Ray Chapman placed his knee and lower leg on detainee Saul Vargas's neck while other officers and a VitalCore nurse stood nearby. Sergeant Andrew Hyde deployed a Taser on Vargas five times, including after Vargas was restrained. The VitalCore nurse removed Taser barbs while Chapman's knee remained on Vargas's neck and left without assessing him. Vargas was left unattended for nearly twenty minutes. The medical examiner ruled the death a homicide caused by asphyxia due to neck compression. A Galveston County grand

jury indicted Chapman for criminally negligent homicide in August 2025. Vargas was one of four people who died in Sheriff's Office custody in 2024.

70. No change in Sheriff's Office use-of-force training, supervision, or discipline followed these incidents.

### *J. Leadership of the Sheriff's Office*

71. In June 2024, the Texas Commission on Law Enforcement ("TCOLE") filed a petition seeking revocation of Jimmy Fullen's peace officer license, alleging that he had submitted false or untruthful information on personal history statements to two law enforcement agencies. On December 10, 2025, TCOLE adopted, by a 6–0 vote, an Agreed Order with Fullen imposing a six-month probated suspension.

72. On taking office in January 2025, Sheriff Fullen appointed Joel Caldwell as Chief Deputy, the second-highest position in the Sheriff's Office. Caldwell had resigned from the Galveston Police Department effective January 1, 2025. His record at the Galveston Police Department included four suspensions under three chiefs of police; findings of falsified use-of-force reports; failures to activate his body-worn camera during uses of force; deployment of a Byrna launcher into a crowd; and unlawful arrests. He was a named defendant in *Rebmann v. City of Galveston*, No. 3:24-cv-00155 (S.D. Tex.).

### *K. Training, Supervision, and Discipline*

73. Galveston County, through the Sheriff, sets the training that deputies receive on the use of force, including force on persons who are already held by officers or are

on the ground; on intervening when another officer uses force; on responding to profanity and verbal criticism; and on documenting force accurately.

74. Galveston County did not train deputies that a person who is already held by two officers is not to be lifted and brought down face-first onto concrete, or that a person who is face-down on the ground is not to be struck in the face to obtain compliance.

75. Galveston County did not train deputies that issuing commands to a person whose arms are held by other officers, and then treating that person's failure to comply as resistance, is not a basis for force.

76. Galveston County did not train deputies that profanity or verbal criticism directed at an officer is not a basis for force.

77. Galveston County did not train, supervise, or require supervisors reviewing use-of-force reports to refer for investigation a report in which a deputy states that he struck a person on the ground in the face to obtain compliance.

## VI. CLAIMS FOR RELIEF

### CLAIM I – Excessive Force – Fourth Amendment, 42 U.S.C. § 1983 (*Against Savage*)

78. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

79. Savage acted under color of state law.

80. Savage seized Plaintiff and used force on him when, after Savage and Cagnon had taken hold of Plaintiff's arms, Savage wrapped his arms around Plaintiff from

behind, lifted him off his feet, and brought him down face-first onto concrete, coming down on top of him.

81. The force was clearly excessive to the need and objectively unreasonable. The offense at issue was a misdemeanor. Plaintiff was unarmed, had been held by both arms by Savage and Cagnon, and was held from behind by Savage when Savage lifted him. The takedown caused Plaintiff's injuries.

82. Savage was within arm's reach when Cagnon struck Plaintiff twice in the face after Plaintiff was face-down on the concrete. Savage knew Cagnon was using force on a person who was on the ground, had a reasonable opportunity to stop the second strike, and did not act.

83. Savage acted with reckless and callous indifference to Plaintiff's rights.

84. Plaintiff seeks compensatory damages and punitive damages against Savage.

**CLAIM II – Excessive Force – Fourth Amendment, 42 U.S.C. § 1983 (*Against Cagnon*)**

85. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

86. Cagnon acted under color of state law.

87. Cagnon used force on Plaintiff when, after Plaintiff was face-down on the concrete, Cagnon struck him twice in the face with a closed fist.

88. The strikes were clearly excessive to the need and objectively unreasonable. Plaintiff was unarmed, was face-down on the concrete, had just struck his face on

the concrete, and was being held on the ground by more than one deputy. The strikes caused and aggravated Plaintiff's injuries.

89. Cagnon acted with reckless and callous indifference to Plaintiff's rights.

90. Plaintiff seeks compensatory damages and punitive damages against Cagnon.

**CLAIM III – Failure to Intervene – Fourth Amendment, 42 U.S.C. § 1983 (*Against Mejia*)**

91. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

92. Mejia acted under color of state law.

93. Mejia was present when Cagnon struck Plaintiff twice in the face after Plaintiff was face-down on the concrete. Mejia was within arm's reach of Plaintiff and Cagnon, and his own hands were on Plaintiff.

94. Mejia knew that Cagnon was striking the face of a person who was on the ground and being held, had a reasonable opportunity to stop the second strike by word or by hand, and chose not to act.

95. Mejia acted with reckless and callous indifference to Plaintiff's rights.

96. Plaintiff seeks compensatory damages and punitive damages against Mejia.

**CLAIM IV – Retaliation – First Amendment, 42 U.S.C. § 1983 (*Against Savage and Cagnon*)**

97. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

98. Savage and Cagnon acted under color of state law.

99. Plaintiff engaged in protected speech when he said to Savage, "Hey fuck you man," and when he questioned the deputies about his coworker's arrest and his own conduct.

100. Savage and Cagnon took hold of Plaintiff and used the force described in Sections V.C and V.D within seconds of that speech. That force would chill a person of ordinary firmness from continuing to speak.

101. The force was substantially motivated by Plaintiff's speech. Before Plaintiff spoke, Cagnon had agreed to bring the wallet to Plaintiff.

102. This claim challenges the force used, not Plaintiff's arrest.

103. Plaintiff seeks compensatory damages and punitive damages against Savage and Cagnon.

**CLAIM V – Municipal Liability – First and Fourth Amendments, 42 U.S.C. § 1983 (*Against Galveston County*)**

104. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

105. The Sheriff of Galveston County is the County's final policymaker for law enforcement, including the use of force by deputies and their training, supervision, and discipline.

106. Galveston County had a custom of tolerating force against persons who were already held by officers or on the ground, and of approving use-of-force reports describing such force without investigation. The incidents in Section V.I, the

approval of Cagnon's report described in Section V.H, and the absence of any investigation or discipline afterward reflect that custom.

107. Galveston County failed to train and supervise deputies as described in Section V.K. In light of the incidents described in Section V.I, the need for that training and supervision was obvious, and the County was deliberately indifferent to it.

108. The County's custom and its failure to train and supervise were the moving force behind the takedown and the strikes described in Sections V.C and V.D, and behind Mejia's failure to intervene.

109. Plaintiff seeks compensatory damages against Galveston County.

**CLAIM VI – Denial of Medical Care – Fourteenth Amendment, 42 U.S.C. § 1983 (*Against Galveston County*)**

110. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

111. After his arrest, Plaintiff was a pretrial detainee in the custody of Galveston County.

112. Plaintiff had a serious medical need. His injuries were visible, and the jail nurse refused to accept him into the jail because of their severity.

113. Galveston County, through its jail personnel and its contracted medical provider, knew of that need and responded to it with deliberate indifference, including by providing or arranging for the stitching of Plaintiff's lip without adequate anesthetic.

114. Galveston County's custom of inadequate medical response to detainees injured by force, reflected in the incidents in Section V.I involving Jesse Clayton Jacobs and Saul Vargas, was the moving force behind that response.

115. Plaintiff seeks compensatory damages against Galveston County.

## VII. DAMAGES

116. Plaintiff repeats, realleges, and incorporates by reference each preceding paragraph as if fully set forth herein.

117. As a direct and proximate result of Defendants' conduct, Plaintiff suffered past and future physical pain; past and future mental anguish and emotional distress; past medical expenses; future medical expenses, including dental treatment for the tooth knocked from his mouth and damage to adjacent teeth, implants, crowns, and related restorative care; physical impairment and disfigurement; loss of enjoyment of life; and past and future lost wages and loss of earning capacity.

118. Plaintiff seeks punitive damages against Savage, Cagnon, and Mejia in their individual capacities.

119. Plaintiff seeks reasonable attorney's fees and costs under 42 U.S.C. § 1988.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38.

## IX. REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Ethan Carl Dick respectfully requests that the Court enter judgment in his favor and against Defendants, and award him:

a. compensatory damages against each Defendant in an amount to be determined by the jury;

b. punitive damages against Defendants Savage, Cagnon, and Mejia in their individual capacities;

c. reasonable attorney's fees and costs under 42 U.S.C. § 1988;

d. pre-judgment and post-judgment interest as allowed by law; and

e. such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Date: October 12, 2026

Respectfully submitted,

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**
Minnesota Bar No.: 0403083
SDTX Bar No.: 3746531
***Vincent Civil Rights – a Division of Vincent Law, PLLC***
1035 Dairy Ashford, Suite 145
Houston, Texas 77079
**Mailing Address:**
P.O. Box 940129
Houston, Texas 77094
Tel: (713) 223-9300
Fax: (832) 603-4444
**info@vincentlawpllc.com**

*/s/ Adalberto E. Ruiz*
**Adalberto E. Ruiz**
Texas Bar No.: 24071767
SDTX Bar No.: 2925292
***Ruiz Law Firm, PLLC***
3718 E. Broadway Street
Pearland, Texas 77581
Tel: (713) 234-7894
Fax: (832) 408-8540
**alberto@ruizlawyer.com**

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on October 12 2026, I filed the foregoing *Plaintiff's First Amended Complaint* through the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

*/s/ Courtney A. Vincent*
**Courtney A. Vincent**